JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-09950 RGK (AJWx) | Date | February 8, 2013 |
|---|---|---|---|
| Title | IP Telesis Inc. v. Velocity Networks Inc. et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams, Not Present | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER re: Nominal Defendant Velocity Network Inc.'s Motion to Terminate Derivative Litigation (DE 70) and Moving Defendants' Motion for Summary Judgment (DE 69)**

## I. INTRODUCTION

On December 1, 2011, IP Telesis, Inc. ("Plaintiff") filed a Complaint on behalf of itself and other shareholders of Velocity Networks, Inc. ("Velocity") against three members on Velocity's Board of Directors (the "Board"): Kurt Wolfgang ("Wolfgang"), Christian Burke ("Christian"), and Richard Gross ("Richard") (collectively, "Director-Defendants"). On July 27, 2012, Plaintiff filed a First Amended Complaint ("FAC") adding as defendants Sheri Berke ("Sheri"), Lyle Maul ("Maul"), and Baker, Burton & Lundy, P.C ("BB&L") to Plaintiff's First claim. On November 5, 2012, the Court dismissed BB&L.

The claims arise from two resolutions passed by Velocity's Board to sell one of its assets, and to use the sale proceeds to buy back stock owned by Directors Christian and Richard. Plaintiff's First claim is brought as a shareholder derivative action, alleging breach of fiduciary duties and misappropriation of funds. Plaintiff's Second and Third claims are brought as an individual suit, alleging breach of fiduciary duties and removal of Director-Defendants from the Board.

Presently before the Court is Nominal Defendant Velocity's Motion to Terminate the Shareholder Derivative Action Pursuant to the Findings of the Special Litigation Committee. Also before the Court is Defendants Wolfgang, Christian, Richard, and Sheri's ("Moving Defendants") Motion for Summary Judgment.

Based on the foregoing, the Court **GRANTS** Velocity's Motion to Terminate the Shareholder Derivative Action and **DENIES as moot** Moving Defendants' Motion for Summary Judgment as to the Derivative Action (Claim One). The Court also **GRANTS in part** Moving Defendants' Motion for Summary Judgment as to Plaintiff's individual claims. (Claims Two and Three).

## II.     FACTUAL BACKGROUND

In 1999, Defendants Wolfgang, Christian, and Richard founded Velocity, a technology company. (Compl. ¶ 10.) Plaintiff is a 17% minority shareholder of Velocity. It has the right to appoint one director to Velocity's seven-member Board, and Greg Nielsen ("Nielsen"), Plaintiff's President and CEO, serves as the appointed Board member. Velocity also employed Nielsen as head of its sales and business development departments until April 2011.

Defendant Wolfgang is Velocity's CEO and a director of the Board. Defendants Christian and Richard are also directors. At the time of the relevant events, Defendant Sheri was Velocity's Chief Financial Officer and a director.

In 2011, Velocity, led by Wolfgang, wanted to restructure the company in order to remain competitive in the technology industry. It sought to execute two related transactions: (1) to sell its Data Center and (2) to use the proceeds to repurchase company stock held by Christian and Richard (the "stock redemption"). Plaintiff, through Nielsen, adamantly opposed this proposal. Despite Plaintiff's protests, on April 6, 2011, the Board approved the transactions, with the interested directors abstaining from voting.

After the Board's approval, Velocity's law firm, BB&L, advised Wolfgang that Velocity could not go forward with the stock redemption as originally approved by the Board without violating certain financial ratios mandated by the California Corporations Code. Rather than going back to the Board for further instructions, Wolfgang consulted BB&L and created a "work-around" solution to effectuate the stock redemption. The solution would require Velocity to use part of the Data Center sale proceeds to pay down a company debt owed to Wolfgang. In turn, Wolfgang would use those funds to purchase the first group of Velocity shares from Christian and Richard. Velocity would then entered into separate agreements to repurchase the remaining group of shares. Shortly thereafter, the parties executed the stock redemption according to the work-around.

The Board became aware of the work-around only after the transactions had been completed. In reaction, on September 27, 2011, Plaintiff's Chairman, Brian Pettersen, made a written demand to the Board seeking authorization to file a shareholder derivative action against Wolfgang, Christian, and Richard. The draft complaint alleged Director-Defendants misused the proceeds from the sale of the Data Center contrary to the Board's resolution. In particular, Plaintiff asserted that Wolfgang usurped a corporate opportunity and caused Velocity to use the Data Center proceeds in such a manner as to allow Wolfgang to obtain Richard and Christian's shares. Plaintiff alleged that Defendants conspired together to execute the challenge transactions against Velocity's best interests.

At a Board meeting held on October 25, 2011, the Board voted against Plaintiff's written demand. As interested directors, Wolfgang, Christian, and Richard did not vote; another director, Roger Donaldson abstained. This left only three directors to vote: Nielsen, Linda Gross, and Sheri, who voted two-to-one against Plaintiff's written demand. Nielsen was the only vote in favor of filing the derivative action. Nevertheless, on December 1, 2011, Plaintiff filed the present Complaint.

On February 15, 2012, the Board appointed a Special Litigation Committee ("SLC"), comprised of Directors Sheri and Linda Gross, to further investigate the merits of Plaintiff's derivative action. After an investigation, the SLC found that the challenged transactions, as executed to be appropriate, even though it did not follow the Board's April 2011 resolution. The SLC also determined that it was in Velocity's best interests to not move forward with the derivative action.

## III.   JUDICIAL STANDARD

### A.   Motion to Terminate the Shareholder Derivative Action

A special litigation committee appointed by a corporation's board of directors may terminate a shareholder "derivative action to the extent allowed by the law of the state of incorporation." *Johnson v. Hui*, 811 F. Supp. 479, 483 (N.D. Cal. 1991)(citing *Burks v. Lasker*, 441 U.S. 471, 486 (1979)). Under California law, a special litigation committee–an appointed committee of disinterested directors–may move to terminate a pending shareholder derivative action that it finds in good faith to be contrary to the best interests of the corporation. *Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir. 1979).

When a motion to terminate is filed based on a special litigation committee's recommendation, the court must determine whether: (1) "the committee members were disinterested and [(2)] whether they conducted an adequate investigation" in good faith. *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 185 (2003). If both questions are answered affirmatively, then the court must dismiss the case. *Id.*

A corporation may terminate the action by filing a motion pursuant to Federal Rule of Civil Procedure ("Rule") 23.1 for failing to meet the requirements of a derivative action. Rule 23.1 prohibits a plaintiff shareholder from bringing a derivative action if "the plaintiff does not fairly and adequately represent the interests of the shareholders . . . ." Fed. R. Civ. P. 23.1; *Johnson*, 811 F. Supp. at 483-84. A motion to terminate is akin to a motion for summary judgment as the moving party may point to matters outside the pleading as the basis for relief. *See Lewis*, 615 F.2d at 780-781. The corporation bears the burden of proving that there is no genuine issue of material fact as to the special litigation committee's disinterest or adequacy of its investigation. *Id.*

### B.   Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and [] the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party needs to show only that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut*

*Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV. DISCUSSION

### A. Shareholder Derivative Action (Claim One)

Plaintiff's First claim is a shareholder derivative action against all defendants. Velocity contends that the action should be terminated in light of the Special Litigation Committee's (the "SLC" or the "committee") decision against pursuing the derivative action. The Court agrees.

#### 1. *Special Litigation Committee Defense*

A shareholder derivative action is a lawsuit by a plaintiff shareholder to redress an injury to the corporation that the corporation has failed to redress on its own behalf. *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 183 (2003). When a shareholder alleges wrongdoing by a majority of directors, the board may appoint a special litigation committee of independent directors to investigate the challenged transaction and decide whether a derivative action is warranted. *Id.* at 184-85. If the committee finds that the derivative action is not in the corporation's best interest, they may seek dismissal of the action. *Id.*

The ability to terminate the action is based on the interplay between two fundamental principles of corporations law. *Id.* at 183. First, that a derivative action is filed on behalf the corporation, not the individual shareholders. *Id.* Second, the business judgment rule where the "management of the corporation is best left to those whom it has been entrusted, not to the courts" so long as there is no fraud, breach of trust, or conflict of interest. *Id.*; *Auerbach v. Bennett*, 47 N.Y.2d 619, 630 (1979) (recognizing that "courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments"). Thus, where a corporation decides, through its special litigation committee, not to pursue a derivative action, this decision is protected from judicial review under the business judgment rule. *Id.* A court will only intervene it determines that the committee members had an interest in the challenged transaction or failed to conduct an adequate investigation into the derivative claims. *Id.*; *Finley v. Superior Court,* 80 Cal. App. 4th 1152, 1158 (2000).

With these principles in mind, the Court finds that Velocity met its burden of demonstrating that Velocity's SLC was (1) disinterested and that (2) the SLC conducted an adequate investigation in good faith. The two relevant elements are addressed in turn.

##### i. The Special Litigation Committee Members are Disinterested

The question of the SLC's disinterest and independence "turns on whether a director [or member] is, for *any substantial reasons*, incapable of making a decision with only the best interests of the corporation in mind." *In re Oracle Corp. Derivative Litig.*, 824 A.3d 917, 938 (Del. Ch. 2003) (emphasis added). The SLC members must not "benefit financially or otherwise from the challenged transaction." Cal. Prac. Guide Corps. Ch. 6-G.

The Court finds that Velocity has established that the SLC and its members: (1) Sheri Berke and (2) Linda Gross (collectively, the "SLC Directors") are disinterested and independent. Both directors declared under oath that they did not gain any personal benefit from the challenged transactions, and Plaintiff admits that neither director financially benefitted from the transactions. The SLC's first member, Sheri, served as Velocity's CFO in a part-time

consultant role until last year and had no part in its daily operations. She is a certified public accountant with 40 years of experience in public accounting and finance. Although, Plaintiff added Sheri as a defendant after litigation commenced, this does not make her unqualified to serve as a disinterested member. A director of the board is not disqualified from serving on a special litigation committee if he or she is named as a defendant in the underlying lawsuit, "but did not benefit from the challenged transaction." *Id.* (citing *Lewis*, 615 F.2d at 781-83). As discussed above, Sheri did not benefit from the transactions nor does Plaintiff allege sufficient facts to indicate as much.

The SLC's second member, Linda, served on the Board since the Company's inception. Linda helped her ex-husband Defendant Richard start the company in 1999, and she worked there until 2004 when they divorced. Her qualifications include previously serving on the Board of Directors and Ethics Committee for the Los Angeles County Mortgage Brokers Association.

Plaintiff contends that Sheri and Linda are not disinterested because before being appointed to the SLC in February 2012, both directors voted against the derivative action at the October 2011 Board meeting. Plaintiff argues that because both directors previously rejected Plaintiff's demand to bring a derivative action, that somehow their prior decisions tainted Sheri and Linda's independence when serving on the SLC.

This argument is unavailing. Plaintiff provides insufficient evidence that either the decisions rendered at the October 2011 Board meeting or by the SLC were made against Velocity's best interests. Even assuming the October 2011 decision was inappropriate, Plaintiff fails to show how the October 2011 decision had an improper influence over the SLC Directors and the SLC's recommendation. Sheri and Linda were not bound to the October 2011 decision. They were fully entitled to change their opinions if so warranted, however, the SLC investigation simply confirmed that a derivative action was not in Velocity's best interests.

Plaintiff's remaining allegations do not rise to the level of being a "substantial reason" why the SLC Directors could not act in Velocity's best interests. As to Sheri, Plaintiff questions her independence by pointing to certain actions she took. But, there is no indication that her actions were extraordinary or against Velocity's best interests. She performed these actions either as part of her CFO role or according to the instruction of Velocity's legal counsel or CEO. Thus, Plaintiff fails to refute Sheri's disinterest in the challenged transactions.

As to Linda, Plaintiff's only significant allegation is that she is the ex-wife of Defendant Richard, and they have a daughter from their marriage. However, this is not a substantial reason why she could not act in Velocity's best interest. Linda and Richard have been divorced for ten years, they share custody of their daughter, and maintain a cordial relationship. Plaintiff does not provide evidence that Richard exerts undue influence over Linda. While Linda is a Velocity Board member, she is not an employee. Thus, Plaintiff fails to refute Linda's disinterest in the challenged transactions.

Based on the foregoing, the Court finds that Velocity has satisfied its burden of showing the SLC and its members, Sheri and Linda, are disinterested. Next, the Court must examine the adequacy of the investigation.

### ii. The SLC Conducted an Adequate Investigation in Good Faith

To determine the adequacy of the investigation, courts must look into "the procedures employed and determine" whether they suggest fraud or bad faith. *Desaigoudar*, 108 Cal. App. 4th at 189. Proof that the investigation had been "so restricted in scope" or "so shallow in

execution" as to constitute a pretext or sham, would be considered inadequate or in bad faith. *Id.*

The Court finds that the SLC conducted an adequate investigation in good faith. Both prior-to and after being appointed to the SLC, both Sheri and Linda investigated the merits of the derivative action by interviewing interested parties, evaluating corporate records, analyzing financial data, and various other activities. (Decl. S. Berke; Decl. L. Gross 2-3.) They heard presentations from Plaintiff, and spoke with Plaintiff's representatives several times. Based on their findings, the SLC determined that pursuing the derivative action was not in Velocity's best interests.

While Plaintiff contends that the investigation was inadequate, it fails to support this argument with sufficient facts. Plaintiff fails to even challenge the SLC's investigation conducted after its appointment. It merely attacks Sheri and Linda's conduct prior to their SLC appointment, which for reasons described above is an improper challenge. Thus, the Court finds that the SLC conducted an adequate investigation in good faith.

Based on the foregoing, Velocity has met its burden of establishing that the SLC and its members are disinterested and conducted an adequate, good faith investigation. There are no triable issue of material fact as to these issues. Hence, the SLC's recommendation not to pursue the derivative action is shielded by the business judgment rule. Accordingly, the Court **GRANTS** Nominal Defendant Velocity's Motion to Terminate the Shareholder Derivative Action, Claim One in the Complaint, and **DENIES as moot** Moving Defendants' Motion for Summary Judgment as to the Derivative Action.

### B. Individual Suit by Plaintiff (Claims Two and Three)

Plaintiff brings the Second and Third claims in its individual capacity as a minority shareholder. It alleges that Wolfgang, Christian, or Richard (collectively, "Director-Defendants") breached their fiduciary duties to Plaintiff (Second claim) and because of their conduct should be removed as directors of the Board (Third claim). Moving Defendants contend that Plaintiff cannot establish that Director-Defendants owed a fiduciary duty to Plaintiff. The Court agrees.

Generally, where a director breaches a fiduciary duty to a corporation, a shareholder may only bring a derivative action against the director because the duties are owed to the corporation, rather than the individual shareholder. *Schuster v. Gardner*, 127 Cal. App. 4th 305, 313 (2005). Thus, a shareholder may individually file claims against the a director "only if the damages to the shareholders were not incidental to the damages to the corporation." For example, where the defendants breached a duty owed directly to the plaintiff shareholder. *Id.*; Harold March *et al.*, Marsh's California Corporation Law § 15.11 (2013).

Here, the challenged transactions damaged Velocity, rather than Plaintiff individually. Thus, in order to proceed on its Second and Third claims, Plaintiff contends Director-Defendants, as a shareholder block, owed a fiduciary duty to Plaintiff because they were controlling shareholders. Although Director-Defendants did not own a majority of Velocity's outstanding shares, Plaintiff alleges that they dominated the Board in a manner that gave them actual control over Velocity's affairs. Therefore, Director-Defendants had a duty to Velocity's shareholders not to exercise their dominance to the detriment of the other shareholders. *See Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969); *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 70 (Del. 1989).

However, Plaintiff fails to provide sufficient evidence that Director-Defendants owed a

fiduciary duty as controlling shareholders. "'A plaintiff who alleges domination of a board of directors and/or control of its affairs must prove it. Stock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control." *In re ATM Fee Antitrust Litigation*, 686 F.3d 741, 757 (9th Cir. 2012) (citations omitted); *Kaplan v. Centex Corp.,* 284 A.2d 119, 122 (Del. Ch. 1971)

Plaintiff's allegations of actual control are conclusory and unfounded. Due to their involvement with Velocity, each director naturally had some influence over the Board. However, this influence was not extraordinary, and Plaintiff fails to provide sufficient evidence to the contrary. Furthermore, Director-Defendants cannot exert actual control over Velocity due to structural and ownership limitations. Prior to the approval of the challenged transactions, Director-Defendants collectively owned less than 40% of Velocity's outstanding shares; Wolfgang owned approximately 8%, Richard owned 10%, and Christian owned 20%. Moreover, as a shareholder block, they possessed less than the majority of positions on the Board, holding only three of the seven seats.

Taken altogether, Plaintiff has failed to demonstrate that Director-Defendants exerted actual control of Velocity's affairs such as to owe a fiduciary duty as controlling shareholders to Plaintiff. Thus, Plaintiff's individual claims must fail. Accordingly, the Court **GRANTS** Moving Defendants' Motion for Summary Judgment as to Plaintiff's Second and Third claims.

## V.    CONCLUSION

In light of the foregoing, the Court **GRANTS** Velocity's Motion to Terminate the Shareholder Derivative Action and **DENIES as moot** Moving Defendants' Motion for Summary Judgment as to the Shareholder Derivative Action (Claim One). The Court also **GRANTS in part** Moving Defendants' Motion for Summary Judgment as to Plaintiff's individual claims (Claims Two and Three).

**IT IS SO ORDERED.**

_____ : _____

Initials of the Preparer _____